# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.              Case No. 05-CR-195

**CARLOS MANUEL ARREDONDO-DOMINGUEZ,**
a/k/a Armando I. Arredondo,
a/k/a Armando Arredondo-Dominguez,

    **Defendant.**

---

### ORDER ON THE DEFENDANT'S PRETRIAL MOTIONS

---

  On July 29, 2005, the government filed an information against the defendant, Carlos Manuel Arredondo-Dominguez ("Arredondo-Dominguez"). The information charges that Arredondo-Dominguez is an alien who, between January 1, 2005 and at least July 20, 2005, knowingly eluded examination and inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(2).

  Arredondo-Dominguez has filed a motion to dismiss in which he alleges that the information is time-barred by the five-year statute of limitations set forth at 18 U.S.C. § 3282. In addition, Arredondo-Dominguez argues that the information should be dismissed because he was detained for twelve days before a finding of probable cause was made. The pleadings on Arredondo-Dominguez's motion to dismiss closed just prior to the final pretrial conference, which was held on October 12, 2005. At that time, the court indicated that Arredondo-Dominguez's motion to dismiss would be denied and that a written decision setting forth the court's reasoning

1

in full would subsequently be issued. Accordingly, both grounds for relief raised in support of Arredondo's motion to dismiss will be discussed herein.

## MOTION TO DISMISS: STATUTE OF LIMITATIONS

Arredondo-Dominguez claims that the five-year statute of limitations set forth at 18 U.S.C. § 3282 precludes the charge set forth in the information. Section 3282 reads, in relevant part, as follows:

> (a) In general — Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

§ 3282(a). Arredondo-Dominguez says that § 3282(a) precludes the charge in the information because he entered the United States on or around April 22, 1997 and worked under the false name of Eduardo Maldonado until his apprehension.

The government opposes Arredondo-Dominguez's motion, claiming that the statute of limitations does not apply to a violation of § 1325(a)(2) because that statute involves a "continuous offense"—i.e., Arredondo-Dominguez is continuously eluding inspection and examination until the time that he is apprehended. Thus, according to the government, the five-year statute of limitations did not begin running until July 20, 2005, the date of Arredondo-Dominguez's arrest. In support of its position, the government contends that a violation of § 1325(a)(2) is analogous to a violation of § 1326, which has been characterized as a continuous crime by several courts. (Gov. Resp. Br. at 4-5.). In addition, the government argues that the statute of limitations is an affirmative defense for which it is incumbent on Arredondo-Dominguez to prove the date of his entry. Thus, the government claims that application of the statute of limitations is an issue reserved for trial.

2

## Analysis

The court agrees with the government that the defendant's motion is premature. If Arredondo-Dominguez cannot establish that he entered the United States more than five years ago, application of the statute of limitations will be moot. On the other hand, if Arredondo-Dominguez demonstrates that he entered the United States on April 22, 1997, as he alleges, the court will then determine whether the statute of limitations applies on these facts. Accordingly, the motion will be denied without prejudice as premature.

That being said, the court notes that § 3282(a) is unlikely to preclude the charge against Arredondo-Dominguez, based on the information submitted by the parties to date. Section 1325(a)(2) requires the government to prove that Arredondo-Dominguez eluded examination and inspection when entering the country. To "elude" inspection means that the defendant knew inspection by law enforcement officials was required and avoided it. One obvious way to elude inspection is to avoid law enforcement or immigration officials altogether. When a defendant utilizes that means of elusion, the result is two fold: the defendant violates § 1325(a)(2) at the time of entry <u>and</u> the defendant intentionally hides his status as an alien and his illegal entry from law enforcement officials.

This has important consequences on the application of the statute of limitations. Statutes of limitations shield the defendant from the burden and jeopardy of confronting distant offenses, while allowing the government sufficient time to investigate and prosecute criminal conduct. <u>United States v. Marshall</u>, 856 F.2d 896, 899-900 (7th Cir. 1988)(internal citations omitted). However, statutes of limitations are not intended to shield defendants that intentionally cause delay in prosecution. Indeed, tolling statutes of limitations reflects the congressional belief that, where the defendant impedes the discovery and prosecution of his criminal conduct, his right to

3

avoid prosecution for distant offenses is diminished while the government's need for additional discovery time is strengthened. Id. Thus, pursuant to 18 U.S.C. § 3290, "[n]o statute of limitations shall extend to any person fleeing from justice."

In the present case, Arredondo-Dominguez acknowledges that he used an alias to illegally work in the United States for eight years. If the government also proves that Arredondo-Dominguez eluded inspection after his illegal entry, the court will be presented with the scenario where any delay in the government's prosecution efforts are directly attributable to impediments created by Arredondo-Dominguez himself. At this point, it does not appear that the government knew of Arredondo-Dominguez's presence and failed to act on that knowledge. Moreover, the fact that Arredondo-Dominguez used an alias raises a reasonable inference that he was aware that immigration or law enforcement officials would be likely to apprehend him if his true identity were known. Thus, while Arredondo-Dominguez might not have fled justice in the sense that he knew a charge was pending against him and physically left the jurisdiction where the crime was committed, he arguably had intent to avoid the immigration laws that would require his deportation. Under those circumstances, all of the policy considerations that are the basis for §3290 apply with force, and the court need not delve into whether a violation of § 1325(a)(2) constitutes a continuous offense.

In that regard, however, whether an offense of § 1325(a)(2) is continuous affects the date that should be set forth in the information when describing the charged offense. Accordingly, the court will discuss whether an offense of § 1325(a)(2) is a discrete event, as Arredondo-Dominguez asserts, or whether an offense continues until apprehension, as the government asserts. Although the Seventh Circuit has not addressed whether § 1325(a)(2) is a continuous offense, this circuit has been clear in defining the limited circumstances that warrant an offense being classified as

4

continuous, such that the statute of limitations is tolled. United States v. Yashar, 166 F.3d 873 (7th Cir. 1999). In Yashar, the court stated that "[a]n offense is committed when it is completed, that is, when each element of that offense has occurred. An exception has been recognized for 'continuing offenses.' That is a term of art, and does not merely mean an offense that continues in a factual sense." Id. at 875 (internal citations omitted). An offense is deemed 'continuing' for statute of limitations purposes only when:

> (1) 'the explicit language of the substantive criminal statute compels such a conclusion;' or
>
> (2) 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'"

Id. (internal citations omitted). The classic example of a continuing offense is a conspiracy, but other offenses such as escape or kidnapping also may fall within those definitions. Id. The hallmark of the continuing offense is that it extends beyond the initial illegal act, and that "'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." Id. For such continuing offenses, the statute of limitations does not begin to run when all elements are initially present, but rather begins when the offense expires. Id. at 875-76. Therefore, for a conspiracy, the statute of limitations would not run from the time of the first overt acts, but instead would run from the occurrence of the last act in furtherance of the conspiracy. The continuing offense doctrine extends the statute of limitations, and courts are "admonished to construe that term narrowly." Id. at 876.

The Yashar court addressed the issue of whether the statute of limitations for a violation of 18 U.S.C. § 666, a statute governing embezzlement of federal program funds, began to run (1) from the first time that the defendant illegally received wage payments and health insurance coverage or (2) from the defendant's most recent illegal receipt of funds. Some of the defendant's

5

earlier embezzlements were beyond the five-year statute of limitations, and the court did not know whether the remaining embezzlements involved sufficient funds to constitute a violation of § 666. Thus, if the statute of limitations precluded the charging of the early embezzlements, the indictment might be dismissed in its entirety. Conversely, if the charge could include all embezzlements, both early and recent, there would be no basis for dismissing the indictment.

Suggesting that the court distinguish a "continuing offense" from a continuing course of conduct, the government argued that the statute of limitations did not begin to run until the defendant's most recent embezzlement. The Yashar court rejected this argument. According to the Seventh Circuit, such an approach would mean that the government's prosecutorial decision regarding the scope of the charge would determine the running of the limitations period. Thus, the government's "charging decision could delay the running of the limitations period on discrete offenses" and "the limitations period would be virtually unbounded." Id. at 879. This would transform the limitations period from a check on governmental delay in prosecution to a function of prosecutorial discretion. Id. Accordingly, the statute of limitations was not tolled, absent a determination that the charge involves an offense of the special kind that is classified as "continuing".

In the present case, neither of the options for a continuing offense set forth in Yashar indicate that an offense of § 1325(a)(2) is continuous. The court will first address whether the "explicit language of the substantive criminal statute compels" the conclusion that the offense be deemed continuous. In that regard, the language of § 1325 differs significantly from the language of § 1326, a statute cited by the government as analogous for purposes of classification as a continuous offense. As pointed out in United States v. Rincon-Jimenez, a Ninth Circuit case cited by Arredondo-Dominguez, § 1326(a)(2) is violated when an alien has been arrested, is deported,

6

and thereafter . . . is at any time *found in the United States*. 595 F.2d 1192, 1194 (emphasis added). The words "found in the United States" are important because they unequivocally indicate that a violation of § 1326 is complete when law enforcement officials discover the alien. Until that time, the offense is ongoing, and the statute of limitations does not begin. No such language is contained in § 1325(a)(2), and the court concludes that the first option for finding that an offense is "continuous" has not been met.

The government suggests that the court look to 8 U.S.C. § 1225 for guidance as to whether a violation of § 1325(a)(2) is continuous. Section 1225 describes the inspections that are eluded when § 1325(a) is violated. Section 1225(a)(1) states that "[a]n alien present in the United States who has not been admitted [and therefore has not been inspected]. . . shall be deemed for purposes of this chapter an applicant for admission." An applicant for admission, in turn, "shall be inspected by immigration officers." § 1225(a)(3). Based on these subsections, the government concludes that Arredondo-Dominguez, now present in the United States, is still required to undergo inspection and therefore continues to violate § 1325(a).

The court does not reach that conclusion. The fact that § 1225 deems aliens present in this country as applicants for admission who must submit to inspection, does not change the fact that inspection is to occur at the time of entry. Failure to submit to inspection is a violation of § 1325 but remains a discrete act. There is a strong presumption that offenses are not continuous. As stated in <u>Yashar</u>, "because the continuing offense doctrine extends the statute of limitations, we are admonished to construe that term narrowly." The reference to an alien's presence in § 1225, tied to the classification of aliens as an applicants for admission, then linked to the inspection requirement, all located outside of § 1325(a)(2) itself is too tangential a connection to satisfy the strict standard by which this court is bound. If Congress intended a continuing violation, it could

7

have accomplished that with clarity, as it has done for § 1326 and for other offenses. See e.g., 18 U.S.C. § 3284 ("[t]he concealment of assets of a debtor in a case under title 11 *shall be deemed to be a continuing offense* until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge")(emphasis added).

Lack of clear intent in the statutory language of § 1325 means that a violation of that section can only be a continuing if "Congress must assuredly have intended that it be treated as a continuing [offense]." Section 1325(a)(2) prohibits eluding examination or inspection by immigration officers. The Rincon-Jimenez court concluded that examination and inspection are to take place at the time of entry and that violations of § 1325(a)(2) are discrete occurrences. Rincon-Jimenez, 595 F.2d at 1193-94 (citing 8 U.S.C. §§ 1224-1225). This court finds the reasoning of Rincon-Jimenez persuasive. A violation of § 1325(a)(2) is not comparable to offenses that are, by their nature, continuing such that "each day brings a renewed threat of the evil Congress sought to prevent." Indeed, the goal of one who eludes inspection is to gain unauthorized entry to the United States. Once the alien crosses the border and is undetected by law enforcement and immigration officials, he has immediately accomplished the goal of his illegal endeavor. That is not the case in offenses such as conspiracy or racketeering, where an initial action is generally the first step of many that brings the defendant closer to his ultimate goal. Once inside the United States, it is true that the alien continues to enjoy the fruits of his crime until he is apprehended. However, the same could be said for most every crime, and that alone is far from a sufficient basis to classify the offense itself as "continuous" under the strict standards discussed in Yashar.

8

Case 2:05-cr-00195-AEG   Filed 10/18/05   Page 8 of 12   Document 22

The government argues that a violation of § 1325(a)(2) should be treated as a continuing offense because it has no way to pinpoint the date that an alien enters the country if an alien successfully eludes examination and inspection. (Gov. Resp. Br. at 5.). Thus, the government contends that interpreting § 1325(a)(2) as an isolated offense will, in large part, preclude its prosecution. While extreme difficulty in prosecution might bear on the second Yashar option, whether the "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one," the court cannot assume that prosecution efforts would be as difficult as the government suggests. In fact, the elements of § 1325(a)(2) do not require the government specify any date of entry. While the pending information specifies that the offense occurred "between January 1, 2005 and at least July 20, 2005," such a time period seems to pertain only to the government's continuous offense theory.

Under the discrete offense theory, the government should list a specific date, such as the date an accused was apprehended (in this case July 20, 2005), to apprise the defendant of the charges against him and for purposes of double jeopardy. Once an offense date is charged, if the defendant claims he entered beyond the statute of limitations, the burden of proof as to a particular date of entry rests with the defendant, not the government, as the statute of limitations is an affirmative defense. Furthermore, in light of the court's conclusion that § 3290 will generally prevent application of the statute of limitations based on the elusion element required for a violation of § 1325(a)(2), there is no risk of the result that the government contemplates.

## MOTION TO DISMISS: PROBABLE CAUSE

Arredondo-Dominguez also argues that the information should be dismissed because it was filed without a finding of probable cause. In support of this argument, Arredondo-Dominguez relies on this court's dismissal of several similar informations, filed by the

9

government in case numbers 05-CR-183, 05CR-184, 05-CR-185, 05-CR-186, 05-CR-187, and 05-CR-188.  When the government filed the informations in those cases, the defendants were being held in custody by agents of the Bureau of Immigration and Customs Enforcement ("BICE").  The government notified BICE officials to bring the defendants to federal court for a combined initial appearance/arraignment and plea hearing on the informations.  No warrant or summons for any defendant was issued, and no finding of probable cause was made.  The defendants were advised of the charge and penalty, advised of their rights and were temporarily detained, pending a detention hearing.  Three days later, the government filed an amended information with respect to five of the defendants.  The amended informations were identical to the original informations, except that the names and aliases of the defendants were altered.  Detention hearings were scheduled to commence before this court the next day, July 26, 2005.  However, because the defendants had already been detained for several days pending the detention hearing, and a finding of probable cause had not yet been made, this court dismissed the informations.

The government appealed the dismissal and, on August 26, 2005, the Honorable Rudolph T. Randa reinstated all of the informations.  Interpreting Federal Rules of Criminal Procedure 7(c)(1) and 58(b)(1), Judge Randa reasoned that no showing of probable cause is necessary to file an information that charges a misdemeanor.  (Order, Aug. 26, 2005 at 2.).

After further consideration of the matter, this court agrees that the government's charging procedure complies with the Federal Rules of Criminal Procedure and the Fourth Amendment.  The government may file a misdemeanor information without a finding of probable cause.  Probable cause is not required at that time unless the government also seeks a summons or a warrant to compel the accused's presence in court.  If that is the case, then a finding of probable

10

cause is required pursuant to Federal Rule of Criminal Procedure 58, which reads in relevant part as follows:

> (3) Summons or Warrant. Upon an indictment, **or upon a showing by one of the other charging documents specified in Rule 58(b)(1) of probable cause to believe that an offense has been committed and that the defendant has committed it**, the court may issue an arrest warrant or, if no warrant is requested by an attorney for the government, a summons. . . .

FED. R. CRIM. P. 58(d)(3)(emphasis added).

In the present case, the government did not seek a warrant or a summons. Arredondo-Dominguez was already in BICE custody, and the government simply requested that Arredondo-Dominguez be brought for an appearance. Accordingly, the probable cause requirement of Rule 58 was never triggered. Proceeding in this manner, however, does not dispose of the probable cause requirement entirely. The finding of probable cause is simply not required at that most preliminary stage in the proceedings, when the information is first filed. Under the Fourth Amendment, however, "a timely judicial determination of probable cause is a prerequisite to detention." Gerstein v. Pugh, 420 U.S. 103, 126 (1975). While courts enjoy flexibility in combining probable cause determinations with other pretrial proceedings, the determination must be made promptly, with a presumption of unreasonable delay for probable cause determinations made more than forty-eight hours after detention. County of Riverside v. McLaughlin, 500 U.S. 44, 56-58 (1991).

In the present case, Arredondo-Dominguez was in BICE custody from the time of his arrest on July 20, 2005 until the time of his combined arraignment, plea, and detention hearing on August 1, 2005. Subsequent to the arraignment, the parties were each heard regarding the matter of bail. In addition, BICE Special Agent Steven Maltby testified as to the government's evidence in support of the charge against Arredondo-Dominguez. (Callahan Order, Aug. 2, 2005 at 1.).

11

Based on Agent Maltby's testimony, as well as the parties' arguments in support of their respective positions on bond and detention, the Honorable William E. Callahan ordered that Arredondo-Dominguez be released on a $5,000 bond, subject to certain conditions.

Subsequently, in consideration of Gerstein and County of Riverside, Magistrate Judge Callahan made a formal finding of probable cause based on Agent Maltby's testimony. That finding was enumerated in a written decision filed on August 2, 2005, the day after Arredondo-Dominguez's arraignment, plea, and detention hearing. Although the finding of probable cause should have been made when the terms of Arredondo-Dominguez's detention were determined, the finding was nevertheless made within the forty-eight hour period that is presumptively reasonable under County of Riverside. While the presumption can be rebutted—for example, by a showing that delay was "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake"—there is no basis for finding that delay was unreasonable on these facts. 500 U.S. at 56. Accordingly, the court will deny Arredondo-Dominguez's motion to dismiss in this regard.

For all the reasons discussed, the court now enters the following order on Arredondo-Dominguez's motion to dismiss:

**IT IS THEREFORE ORDERED** that Arredondo-Dominguez's motion to dismiss is **denied.**

Dated at Milwaukee, Wisconsin, this 18th day of October, 2005.

s/AARON E. GOODSTEIN  
United States Magistrate Judge
